UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN KANTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONY CORPORATION OF AMERICA and SONY ELECTRONICS INC.,<br><br>Defendants. | Case No.: 1:25-cv-09691-AS<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS SONY CORPORATION OF AMERICA AND SONY ELECTRONICS INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. The Parties ..... 2

B. The Arbitration Agreement ..... 2

C. Kanter's Claims ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

A. Kanter Is Bound By the Arbitration Agreement ..... 5

1. Kanter assented to the Arbitration Agreement when he physically received it and neither returned the Headphones nor opted out of arbitration. ..... 5

2. Kanter is estopped from avoiding the contract he invokes in the Complaint. ..... 8

B. The Court Should Enforce the Arbitration Agreement ..... 10

1. Threshold issues of arbitrability are delegated to the arbitrator. ..... 10

2. Alternatively, Kanter's claims are arbitrable. ..... 12

CONCLUSION ..... 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allstate Ins. Co. (Stolarz)*,
613 N.E.2d 936 (N.Y. 1993)....................6

*Alter v. Resort Props. of Am.*,
2014 WL 2466282 (Nev. May 30, 2014)....................7

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
170 F.3d 349 (2d Cir. 1999)....................8, 9

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................4, 5, 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................4

*Best Concrete Mix Corp. v. Lloyd's of Lond. Underwriters*,
413 F. Supp. 2d 182 (E.D.N.Y. 2006) ....................9

*Brower v. Gateway 2000, Inc.*,
676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ....................7

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ....................5, 6, 7

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) ....................10

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) ....................9

*Excess Ins. Co. v. Factory Mut. Ins. Co.*,
769 N.Y.S.2d 487 (N.Y. App. Div. 2003) ....................6

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
715 N.E.2d 1050 (N.Y. 1999)....................6

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
845 N.E.2d 1265 (N.Y. 2006)....................8

*Guerriero v. Sony Electronics Inc.*,
No. 21-cv-2618, 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022)....................7, 8

*Harrington v. Atlantic Sounding Co.*,
602 F.3d 113 (2d Cir. 2010)....................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....12

*Ide v. Brit. Airways PLC*,
529 F. Supp. 3d 73 (S.D.N.Y. 2021)....5

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*,
67 F.4th 107 (2d Cir. 2023) ....12

*Maldonado v. Nat'l Football League*,
2023 WL 4580417 (S.D.N.Y. July 18, 2023) ....11

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019)....10

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....5, 7

*Nagel Inc. v. Hughes*,
2022 WL 2274353 (S.D.N.Y. June 23, 2022) ....11

*Oppenheimer & Co. v. Neidhardt*,
56 F.3d 352 (2d Cir. 1995)....5

*Regal Games, LLC v. SellerX Eight GMBH*,
714 F. Supp. 3d 251 (S.D.N.Y. 2024)....5

*Roberts v. Rodgers & Hammerstein Holdings LLC*,
172 N.Y.S.3d 682 (N.Y. App. Div. 2022) ....9

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....7

*Shepherd v. Belkin Int'l, Inc.*,
683 F. Supp. 3d 282 (E.D.N.Y. 2023) ....9, 10

*Upstate Shredding, LLC v. Carloss Well Supply Co.*,
84 F. Supp. 2d 357 (N.D.N.Y. 2000)....8, 9

*Wall v. CSX Transp., Inc.*,
471 F.3d 410 (2d Cir. 2006)....6

*Zerman v. Ball*,
735 F.2d 15 (2d Cir. 1984)....6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .....3

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* .....4

Nevada Deceptive Trade Practices Act, NRS 41.600 .....4

New York Gen. Bus. Law
§ 349.....4
§ 350.....4

**Other Authorities**

Commercial Arbitration Rules & Mediation Procedures, Am. Arb. Ass'n (Sept. 1, 2022), https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf.....11

Defendants Sony Corporation of America ("SCA") and Sony Electronics Inc. ("SEL", and together with SCA, "Sony"),[1] hereby respectfully submit this memorandum of law in support of their Motion to Compel Arbitration.

## INTRODUCTION

This case belongs in arbitration. Plaintiff Ian Kanter's claims all stem from his purchase of allegedly defective Sony headphones. The headphones came with an express limited warranty in the box, which Kanter asserts Sony has breached. That same warranty contains an arbitration provision providing that, "[s]hould a dispute or claim arise related to the product," the "Dispute shall be resolved exclusively through binding arbitration" on an individual basis. Kanter had fair notice of the arbitration provision because he physically received the one-page warranty in the same box as the headphones, and the arbitration provision was conspicuous on the document's face. He neither returned the headphones nor opted out of arbitration, which the agreement expressly permitted him to do. Kanter therefore agreed to arbitrate. But even if he had not agreed, Kanter would be estopped from avoiding the arbitration provision in the warranty he is suing under.

Because Kanter is bound by the arbitration agreement, the Court's job is at an end. The arbitration agreement's breadth and its incorporation of the American Arbitration Association's rules constitute a clear delegation to the arbitrator to decide all other questions bearing on arbitrability. In any event, the claims Kanter asserts are plainly within the scope of the arbitration provision. Therefore, the Court should compel arbitration and stay this action.

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted. Citations to "Ex. _" refer to the exhibits attached to the Declaration of David Wheeler ("Decl.").

## FACTUAL BACKGROUND

### A. The Parties

Defendant SEL is a Delaware corporation with its principal place of business in San Diego, California. Dkt. 14. SEL is a consumer electronics company that markets and sells the WH-1000XM5 headphones that Kanter claims to have purchased (the "Headphones"). SEL's parent company, SCA, is a New York corporation with its principal place of business in New York, New York. *Id.* SCA does not design, manufacture, sell, or distribute any consumer electronics products, including headphones.

Plaintiff Ian Kanter alleges that he is a Nevada resident and that he purchased his Headphones from a Best Buy in Carson City, Nevada in November 2022. Dkt. 1 ("Compl.") ¶ 38.

### B. The Arbitration Agreement

Since their launch, each set of Headphones sold directly by SEL or by retailers like Best Buy has included a hard copy of SEL's one-page Limited Warranty (the "Limited Warranty") in the product's box. Decl. ¶¶ 3–4 & Ex. A. The Limited Warranty is also available on SEL's website. Decl. ¶ 5; *see also* Compl. ¶ 121 n.29. The single-page Limited Warranty contains a provision requiring binding arbitration before the American Arbitration Association (AAA) (the "Arbitration Agreement"). The Arbitration Agreement conspicuously states in boldface font: "**For purchases made in the U.S.: Read the following Dispute Resolution/Arbitration provision carefully. It details Your rights and instructions should a dispute related to the product arise.**" Ex. A. It continues:

> **What Happens If We Have A Dispute:** Should a dispute or claim arise related to the product, Your purchase and/or use of the product, the terms of this Limited Warranty, or any service provided under the terms of this Limited Warranty (including any repair or replacement) ("Dispute"), You and Sony agree that the **Dispute shall be resolved exclusively through binding arbitration. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO ARBITRATION, YOU ARE GIVING UP THE RIGHT TO LITIGATE (OR**

> **PARTICIPATE IN AS A PARTY OR CLASS MEMBER) IN ANY DISPUTES IN COURT.**[2]

*Id.* Equally conspicuous is the provision advising purchasers that they may opt out of arbitration by writing to SEL, with no impact on their warranty coverage:

> **Opt-Out Instructions. IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION PROVISION, THEN:** (1) You must notify Sony in writing within 30 days of the date that You purchased the product; (2) Your written notification must be mailed to Sony Electronics Inc., 16535 Via Esprillo, MZ 1105, San Diego CA 92127, Attn: Legal Department; AND (3) Your written notification must include (a) Your NAME, (b) Your ADDRESS, (c) the DATE You purchased the product, and (d) a clear statement that "YOU DO NOT WISH TO RESOLVE DISPUTES WITH ANY SONY ELECTRONICS ENTITY THROUGH ARBITRATION AND/OR BE BOUND BY THE CLASS ACTION WAIVER."
>
> Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and You will continue to enjoy the benefits of the Limited Warranty.

*Id.* Kanter did not opt out of arbitration. Decl. ¶¶ 9–10.

The Arbitration Agreement provides that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (FAA), governs the arbitration, and it requires that any arbitration be administered under the Expedited Procedures of the Commercial Arbitration Rules and the Supplementary Proceedings for Consumer-Related disputes of the AAA. Ex. A.

### C. Kanter's Claims

Kanter claims that an alleged defect caused the hinge on his Headphones to break in September 2025, just under three years after he purchased them and well after the Limited

---

[2] The Arbitration Agreement further requires any arbitration to proceed on an individual basis:

> **You also agree that ANY DISPUTE RESOLUTION PROCEEDING WILL ONLY CONSIDER YOUR INDIVIDUAL CLAIMS, AND BOTH PARTIES AGREE NOT TO HAVE ANY DISPUTE HEARD AS A CLASS ACTION, REPRESENTATIVE ACTION, CONSOLIDATED ACTION, OR PRIVATE ATTORNEY GENERAL ACTION.**

Ex. A.

Warranty's one-year coverage period. Compl. ¶¶ 38, 42, 120. According to Kanter, Sony breached the Limited Warranty by "supplying the Headphones . . . with the Defect" and by failing to provide a warranty replacement. *Id.* ¶¶ 202–03. Kanter contends that "he would not have purchased the Headphones" had he been told that Sony "refused to honor its written Warranty," *id.* ¶ 49, and that he "was a beneficiary of the Limited Warranty." *Id.* ¶ 125. Kanter further alleges that Sony knew of the purported defect, *id.* ¶ 83, concealed its existence, *id.* ¶¶ 131–39, and made representations about the quality of the Headphones that were rendered misleading by the purported defect, *id.* ¶ 160.

Based on these allegations, Kanter asserts the following causes of action on behalf of a putative nationwide class and New York and Nevada subclasses:

Count I: Violation of New York Gen. Bus. Law § 349 (Deceptive Acts or Practices)

Count II: Violation of New York Gen. Bus. Law § 350 (False Advertising)

Count III: Violation of Nevada Deceptive Trade Practices Act, NRS 41.600

Count IV: Breach of Express Warranty

Count V: Breach of the Implied Warranty of Merchantability

Count VI: Deceit and Fraudulent Concealment

Count VII: Unjust Enrichment/Restitution

Count VIII: Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

## LEGAL STANDARD

The FAA reflects "a liberal federal policy favoring arbitration" that requires courts to enforce arbitration agreements "according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). When presented with a motion to compel arbitration, courts consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors*

*Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). But before reaching the second element, courts "must also determine who—the court or the arbitrator—properly decides the issue." *Id.*

On a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment." *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025). Accordingly, courts may consider materials "beyond the four corners of the Complaint." *Ide v. Brit. Airways PLC,* 529 F. Supp. 3d 73, 80 n.1 (S.D.N.Y. 2021). After the moving party establishes an agreement to arbitrate, "the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" *Regal Games, LLC v. SellerX Eight GMBH*, 714 F. Supp. 3d 251, 259 (S.D.N.Y. 2024) (quoting *Harrington v. Atlantic Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)); *see also Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (if the moving party has shown the existence of an arbitration agreement, "the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact").

## ARGUMENT

### A. Kanter Is Bound By the Arbitration Agreement

Kanter is bound by the Arbitration Agreement for two separate reasons. *First*, he was, at a minimum, on inquiry notice of the Arbitration Agreement's terms when he physically received it in the box with his Headphones, and he assented to those terms when he neither returned the Headphones nor opted out of arbitration. *Second*, Kanter is suing under the Limited Warranty, the same contract that contains the Arbitration Agreement. Under well-established rules of estoppel, he is barred from suing under a contract while seeking to evade one of its provisions.

#### *1. Kanter assented to the Arbitration Agreement when he physically received it and neither returned the Headphones nor opted out of arbitration.*

The existence of an arbitration agreement is governed by "[s]tate law principles of contract formation." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). That, in turn, requires

applying New York's choice-of-law rules to determine which jurisdiction's law governs contract formation. *See Zerman v. Ball*, 735 F.2d 15, 19–20 (2d Cir. 1984) ("In deciding a question of state law, the federal court must apply the forum state's choice-of-law rules to determine which state's law governs."). Under New York's choice-of-law rules, "the first step in any case . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006) (quoting *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)).

Here, there are two potential sources of state law: New York and Nevada. Plaintiff seeks to represent both New York and Nevada subclasses, asserts statutory claims under the laws of both states, allegedly resides in and purchased the Headphones in Nevada, and initiated this action in New York. But there is no need for a choice-of-law analysis between New York and Nevada because there is no apparent difference between their laws concerning the elements of contract formation. In the absence of a conflict, and because Nevada case law is generally sparse, "the court should apply the law of the forum state in which the action is being heard." *Excess Ins. Co. v. Factory Mut. Ins. Co.*, 769 N.Y.S.2d 487, 489 (N.Y. App. Div. 2003), *aff'd*, 822 N.E.2d 768 (N.Y. 2004); *see also Wall*, 471 F.3d at 422 ("As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law.").

Under New York law, a binding contract requires "a manifestation of mutual assent." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). "[W]hen an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a

reasonable person would understand to constitute assent." *Davitashvili*, 131 F.4th at 115–16.[3] Inquiry notice "often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.* Whether that person actually reads the terms is irrelevant. *See Meyer*, 868 F.3d at 79 ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice.").

One application of this general principle is a "shrinkwrap" agreement, in which terms are included "inside the packaging of consumer goods." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121 (2d Cir. 2012). Those terms "become enforceable contracts upon the customer's purchase and receipt of the package and the failure to return the product after reading, or at least having a realistic opportunity to read, the terms and conditions of the contract included with the product." *Id.* at 122; *see also Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1998) (finding arbitration agreement formed when consumer retained goods containing terms in product packaging).

This District has previously found that a consumer assented to this very same Arbitration Agreement in similar circumstances. In *Guerriero v. Sony Electronics Inc.*, No. 21-cv-2618, 2022 WL 736428 (S.D.N.Y. Mar. 11, 2022), a nearly identical one-page SEL Limited Warranty, including the same Arbitration Agreement, was physically provided to purchasers of a digital camera in the product's box. *See id.* at *1; *see also Guerriero*, No. 21-cv-2618, Dkt. 10-1 (S.D.N.Y. Aug. 16, 2021) (Limited Warranty). The court held that "the arbitration provision was

---

[3] Nevada law applies a substantially similar standard to assent:

> All parties to a contract must assent to its terms. Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties. If the outward words and acts of the parties can reasonably be interpreted as acceptance, then mutual assent exists.

*Alter v. Resort Props. of Am.*, 2014 WL 2466282, at *2 (Nev. May 30, 2014) (unpublished).

presented clearly and conspicuously to plaintiff" because (1) the Limited Warranty was included in the package, and (2) key language in the arbitration provision was "bolded and in all capital letters" within the one-page document. *Guerriero*, 2022 WL 736428, at *3. The court further concluded that the plaintiff assented to arbitration because he "could opt out of mandatory arbitration in writing within thirty days, and plaintiff did not do so." *Id.*

The same result obtains here. Kanter was on inquiry notice when he received the Limited Warranty in the box with the Headphones, the Arbitration Agreement was conspicuous within the one-page document, and he assented to it by neither returning the Headphones nor opting out of arbitration.

#### 2. *Kanter is estopped from avoiding the contract he invokes in the Complaint.*

Even if Kanter did not assent to the Arbitration Agreement, he is estopped from avoiding it because he alleges reliance on the Limited Warranty and invokes its benefits in the Complaint. It is black-letter law that parties "cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage." *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) (emphasis omitted). As the New York Court of Appeals has held, a party may not avoid arbitration while simultaneously claiming breach of the agreement containing the arbitration provision:

> [Plaintiff's] complaint alleges that [defendant] breached their agreement, thereby acknowledging and relying on the very agreement that contains the arbitration clause [he] seeks to disclaim. . . . [Plaintiff] may not pick and choose which provisions suit [his] purposes, disclaiming part of a contract while alleging breach of the rest.

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006); *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d

Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause.").

The Complaint leaves no doubt that Kanter relies on the Limited Warranty. Indeed, he squarely alleges that he "would not have purchased the Headphones" had he known Sony would not "honor its written Warranty," Compl. ¶ 49, that he "was a beneficiary of the Limited Warranty," *id.* ¶ 125, and that Sony "breached their Limited Warranty" both by supplying him with purportedly defective Headphones and by failing to repair the Headphones, *id.* ¶¶ 202–03. *See Upstate Shredding, LLC*, 84 F. Supp. 2d at 363 (finding allegations in complaint to be "binding judicial admissions" estopping plaintiff from maintaining "inconsistent positions to avoid arbitration"); *see also Roberts v. Rodgers & Hammerstein Holdings LLC*, 172 N.Y.S.3d 682, 683 (N.Y. App. Div. 2022) (when "plaintiff's claim for breach of contract invokes benefits incorporated into the [agreement] explicitly for plaintiff's benefit, his claim is also subject to that agreement's arbitration clause"); *Best Concrete Mix Corp. v. Lloyd's of Lond. Underwriters*, 413 F. Supp. 2d 182, 187 (E.D.N.Y. 2006) (similar).

And while "Sony" is defined to include only SEL in the Limited Warranty for purchases made in the United States, Kanter is also estopped from avoiding arbitration with SCA. A non-signatory may enforce an arbitration provision when the claims against it are (1) "intimately founded in and intertwined with the underlying contract obligations," and (2) its relationship with the signatory, such as being "corporate affiliates," supports estoppel. *Shepherd v. Belkin Int'l, Inc.*, 683 F. Supp. 3d 282, 287 (E.D.N.Y. 2023) (citing *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021)). The Complaint offers a textbook illustration of this principle: SCA is the corporate parent of SEL, *see* Compl. ¶ 30; SCA is treated interchangeably with SEL in the Complaint, *see id.* ¶ 30 n.5; and Kanter claims that SCA is liable under the Limited Warranty containing the

Arbitration Agreement, *see id.* ¶ 202; *Shepherd*, 683 F. Supp. 3d at 288–89 (permitting non-signatory enforcement where "plaintiff does not distinguish in any way between the two defendants").

For these reasons, even if Kanter did not assent to the Arbitration Agreement, he is nonetheless estopped from avoiding it.

### B. The Court Should Enforce the Arbitration Agreement

As discussed above, Kanter is bound by the Arbitration Agreement. The Court need go no further before compelling arbitration because the Arbitration Agreement delegates to the arbitrator the task of deciding arbitrability. If the Court does reach arbitrability, Kanter's claims plainly fall within the scope of the Arbitration Agreement.

#### ***1. Threshold issues of arbitrability are delegated to the arbitrator.***

After concluding that an arbitration agreement exists, the next step is deciding whether "the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128. Like other "threshold questions of arbitrability," that is presumptively for the court to decide. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). But parties are free to delegate those threshold questions to the arbitrator, provided that they express that intent through "clear and unmistakable evidence." *Id.* Clear and unmistakable evidence of that delegation exists when (1) "the arbitration agreement is broad," and (2) the arbitration agreement incorporates "rules that expressly empower an arbitrator to decide issues of arbitrability." *Id.* at 318–19. Further, "the clearer it is from the agreement that the parties intended to arbitrate the particular dispute presented, the more logical and likely the inference that they intended to arbitrate the arbitrability of the dispute." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019).

Here, the Arbitration Agreement clearly and unmistakably delegates arbitrability to the arbitrator because it has a broad scope and incorporates AAA rules. *First*, the Arbitration Agreement covers virtually any dispute that could arise not only from the Limited Warranty but also from the Headphones themselves. The term "Dispute" encompasses any claim "related to the product, [Plaintiff's] purchase and/or use of the product, the terms of this Limited Warranty, or any service provided under the terms of this Limited Warranty (including any repair or replacement)." Ex. A. Courts in this District consider a clause broad when "taken as a whole, the language evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Kuehne + Nagel Inc. v. Hughes*, 2022 WL 2274353, at *4 (S.D.N.Y. June 23, 2022); *see also Maldonado v. Nat'l Football League*, 2023 WL 4580417, at *5 (S.D.N.Y. July 18, 2023) (broad arbitration clause and incorporation of commercial arbitration rules demonstrated parties' intent "to have the arbitrator decide whether any disputes are covered by the" clause). This provision comfortably qualifies.

*Second*, the Arbitration Agreement incorporates the Commercial Arbitration Rules of the AAA (the "Rules"), which expressly empower the arbitrator to decide arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to *the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim*, without any need to refer such matters first to a court." Rule 7, Commercial Arbitration Rules & Mediation Procedures, Am. Arb. Ass'n (Sept. 1, 2022),

https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf.[4] Therefore, because "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).

#### ***2. Alternatively, Kanter's claims are arbitrable.***

If the Court reaches the question of arbitrability, the analysis is straightforward: Kanter's claims are clearly within the scope of the Arbitration Agreement because they "relate[] to the product"—that is, the Headphones. Ex. A; *see* Compl. ¶¶ 153–259. And at least his Breach of Express Warranty and Magnuson-Moss Warranty Act claims additionally relate "to the terms of [the] Limited Warranty." Ex. A. Finally, even if there were ambiguity on this point—there is not—broad arbitration clauses enjoy a "presumption of arbitrability," and any "[d]oubts should be resolved in favor of coverage." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023).

---

[4] The Arbitration Agreement specifically incorporates the Expedited Procedures of the Rules and the Supplementary Proceedings for Consumer-Related disputes. Ex. A. Proceedings under the Expedited Procedures are subject to all of the Rules that are not contradicted by the specific provisions of the Expedited Procedures. *See* Rule 1(b). Rule 7, which governs the arbitrator's power to rule on arbitrability, is not impacted by the Expedited Procedures and applies with full force in expedited proceedings.

## CONCLUSION

The Court should grant Sony's motion to compel arbitration and stay this action.

Dated: April 3, 2026
New York, New York

Respectfully Submitted,
COOLEY LLP

By: */s/Kaitland M. Kennelly*
Kaitland M. Kennelly
Hugh B. Hamilton
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Email: kkennelly@cooley.com
hhamilton@cooley.com

Michael A. Attanasio (*pro hac vice*)
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
Tel: (858) 550-6000
Email: mattanasio@cooley.com

*Attorneys for Defendants Sony Corporation of America and Sony Electronics Inc.*

**LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum of law complies with the word-count limitation of Local Civil Rule 7.1(c) because it contains 3658 words, excluding the parts exempted by Local Civil Rule 7.1(c).

*/s/ Kaitland Kennelly*
Kaitland Kennelly